UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT HEARD,

     Plaintiff,

v.                                                  Case No. 20-11680
                                                    Honorable Victoria A. Roberts

SIRENA LANDFAIR, ET AL.,

     Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 42]

### I.    INTRODUCTION

Plaintiff, an incarcerated person proceeding pro se, filed suit under 42 U.S.C. § 1983 against Defendants, alleging that they violated his First and Fourteenth Amendment rights by retaliating against him for exercising his constitutionally protected right to refuse unwanted medical care. Plaintiff says that Defendants sent him to segregation for refusing to receive a tuberculosis shot.

Before the Court are cross motions for summary judgment. Defendants contend they are protected by qualified immunity and that Heard's constitutional rights were not violated.

1

Because Defendants are entitled to qualified immunity, the Court **GRANTS** their motion for summary judgment and **DENIES** Heard's. Heard's other pending motion for conference regarding discovery dispute is **MOOT**.

## II.    FACTUAL BACKGROUND

Lamont Heard is incarcerated with the Michigan Department of Corrections ("MDOC"). He alleges that MDOC Health Unit Manager Sirena Landfair and MDOC nurse Wendy Blanton ("Defendants") violated his First and Fourteenth Amendment rights by retaliating against him for refusing to receive a tuberculosis shot he did not want to take.

All relevant events occurred while Heard was incarcerated at G. Robert Cotton Correctional Facility ("Cotton") in Jackson, Michigan. The Court first addresses facts Heard alleged in his complaint before turning to additional facts he offers in his motion for summary judgment.

### i.    Facts in Complaint

In August 2018, Defendants summoned Heard to the Cotton infirmary for an annual health screen. He says that after checking his vitals, Defendant Blanton "pulled out a needle and turberculosis [sic] vaccine." [ECF No. 1, PageID.4]. After expressing to Blanton that he did not wish to get a shot that he believed he already received, Heard asked to see his medical records. When Blanton could not produce a record of his first tuberculosis shot, Heard

2

asked to speak to her supervisor, Landfair. Landfair could not produce the record either.

Neither party disputes that MDOC policy states that incarcerated persons may refuse unwanted medical care if they choose. But Heard says that Defendants told him he had "no choice" but to take the tuberculosis shot or be given a misconduct ticket for disobeying a direct order. After Heard refused, he says Defendants called for the prison's emergency response team; they took him to segregation. The same day, Blanton filed a misconduct ticket against Heard for disobeying a direct order.

    ii.   <u>Newly Alleged Facts</u>

In the complaint, Heard alleges that the protected conduct was refusing to consent to a second tuberculosis shot. [ECF 1, PageID.7] ("Had plaintiff not exercised his constitutional and statutory rights to informed concent [sic] and refuse [sic] medical services, he would not have been placed in segregation or [been] written a misconduct.").

In his motion for summary judgment, Heard modifies his asserted protected conduct. He says that Defendants also retaliated against him because he threatened to file a grievance protesting their actions. [ECF No. 44, PageID.478-79] ("the misconduct [ticket] was in retaliation for [plaintiff] stating to both defendants he was going to file a grievance against both . .

3

.".). Even with a liberal construction of his complaint, Heard provides no support in his complaint that he threatened to file a grievance against Defendants.

Pro se complaints must be held to less stringent standards than formal pleadings drafted by lawyers and should be liberally construed. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989). But pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure; they cannot circumvent the need to amend complaints simply by alleging something new in a motion for summary judgment. *See Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017).

The Court will not consider this new allegation this late in the litigation cycle. Instead, the Court confines its analysis to the allegations Heard included in his complaint: that the protected conduct is Heard's refusal to receive a second dose of the tuberculosis vaccine.

In his motion for summary judgment, Heard expands this argument and says that Defendants "[grabbed his] arm and [tried] to insert a needle in it," [ECF No. 44, PageID.485], sent him to segregation, and caused him to be strip-searched by the prison's emergency response team, where Heard was forced "to bend and spread his buttocks while the officer search [sic] for contraband." [ECF No. 44, PageID.477]. After Blanton issued him a

4

misconduct ticket, Heard requested a misconduct hearing, arguing that he should not have received the misconduct because he had a right to refuse medical care. The hearing officer found him not guilty of the misconduct. [ECF No. 44, PageID.479].

Heard argues in his summary judgment motion that he is entitled to relief under the First and Fourteenth Amendment because Defendants retaliated against him for exercising his right to refuse medical care. Defendants say that Heard's retaliation claims fail because: (1) refusing medical care is not protected conduct under the First Amendment; (2) Heard cannot demonstrate the requisite causation to prove a retaliation claim; (3) there was a nonretaliatory basis for Heard to be placed in segregation and issued a misconduct ticket; and (4) he failed to state a Fourteenth Amendment due process claim. Alternatively, Defendants say they are entitled to qualified immunity for their conduct.

## III.   LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden to inform the Court of the basis for his motion and must identify

portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). If the movant satisfies this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324.

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Claims that are not supported by admissible evidence are insufficient to establish a factual dispute, as is the mere existence of a scintilla of evidence in support of the non-movant's position*. Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

The Court must view all submitted evidence, facts, and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir.1994). The necessary inquiry for this Court is "whether the evidence presents a sufficient disagreement to

6

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (internal quotes omitted).

## IV.    ANALYSIS

### A. Defendants Are Entitled to Qualified Immunity.

Defendants say they are entitled to qualified immunity.

Qualified immunity shields government officials from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662 (2011). It is both a defense to liability and a shield from the costs of litigation and trial. *Id.*

In determining whether qualified immunity shields defendants, the Court employs a two-step analysis. The considerations are: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may exercise discretion in deciding which of the two prongs to address first considering circumstances in the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For a plaintiff to defeat qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton* 483 U.S. 635, 640 (1987). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he/she confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004). Qualified immunity applies unless the officer's conduct violated such a clearly established right. *Id*.

Heard fails to meet his burden to establish that Defendants violated any of his clearly established constitutional rights.

## B. Refusing Medical Treatment is Not Protected by the First Amendment.

A First Amendment retaliation claim consists of three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Heard's First Amendment claim fails because refusing medical treatment is not protected conduct for purposes of a First Amendment

8

retaliation claim. Defendants did not deprive him of a right protected under the First Amendment.

### C. Heard Fails to State a Fourteenth Amendment Due Process Violation.

Refusing medical treatment is protected under the Fourteenth Amendment. *See, e.g.*, *Washington v. Harper*, 494 U.S. 210, 221–2, 229; *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir.1996). But Heard does not support a Fourteenth Amendment violation in his complaint. He merely says "he was engaged in protected conduct under the . . . Fourteenth Amendment[]." [ECF No. 1, PageID.8]. Nonetheless, the Court construes the pro se complaint liberally, and concludes that Heard can prove no set of facts in support of this purported Fourteenth Amendment violation.

#### 1. Procedural Due Process

To establish a procedural due process claim under the Fourteenth Amendment, plaintiffs must establish three elements: (1) they have a life, liberty, or property interest protected by the Due Process Clause; (2) they were deprived of this protected interest; and (3) the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Unlike under the First Amendment, incarcerated individuals have a constitutionally protected liberty interest under the Fourteenth Amendment

9

to refuse unwanted medical treatment offered by corrections officials. *See Washington*, 494 U.S. at 221-22. However, Heard's claim fails on the second element: no one forced him to receive the tuberculosis shot. Since he was not deprived of his right to refuse medical care, Heard's procedural due process claim fails as a matter of law.

## 2. Substantive Due Process

Heard's substantive due process claim under the Fourteenth Amendment fails as well.

Whenever an explicit textual source of constitutional protection addresses particular governmental behavior, courts must rely on the more explicit source of protection to analyze the claim, rather than the amorphous and open-ended concept of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Because the First Amendment provides "an explicit textual source" for retaliation claims, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 388, an analysis of Heard's retaliation claim under Fourteenth Amendment substantive due process jurisprudence is improper.

Even if a substantive due process analysis was warranted, such a claim requires the plaintiff to show that the governmental action "shocked the conscience." *Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020). Heard

cannot do that. To shock the conscience, the conduct in question must be so brutal and offensive that it does not comport with traditional ideas of fair-play and decency. *Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014).

The conduct that Heard cites in his motion for summary judgment to support the "shocks the conscience" standard is that Defendants: (1) grabbed his arm and attempted to insert a needle; (2) sent him to segregation; (3) caused the prison's emergency response team to strip search him (where he was forced "to bend and spread his buttocks while the officer search [sic] for contraband"); and (4) filed a misconduct ticket against him.

These acts, though they may be humiliating, are not so egregious or outrageous that they "shock the conscious" as interpreted by the Sixth Circuit. *See Domingo*, 810 F.3d at 406, 410-11. For this reason, any substantive due process claim fails as a matter of law.

## V.    CONCLUSION

Because Heard has not shown that any of his constitutional rights were violated, Defendants are entitled to qualified immunity. Their motion for summary judgment is **GRANTED**. Heard's motion is **DENIED**.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  October 21, 2022